IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 6:15-CV-364-RP |
| $48,880, MORE OR LESS, IN UNITED STATES CURRENCY, | § § § § | |
| Respondent, | § § | |

## ORDER

Before the Court is the Report and Recommendation of United States Magistrate Judge Jeffrey C. Manske. (Dkt. 19). The case was referred to Judge Manske for a Report and Recommendation on the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, as amended. The United States moved to strike the answer and supplement filed by Ephrain Joseph on January 6, 2017. (Dkt. 12). On January 20, 2017, Ephrain Joseph filed a response to the motion to strike, which included several attachments. (Dkt. 14). On March 10, 2017, the Magistrate Judge filed his Report and Recommendation on the motion to strike, recommending that the motion be granted. (Dkt. 19). To date, no objections have been filed.

Because the Report and Recommendation filed by the Magistrate Judge ignores the response filed by Ephrain Joseph, the Court declines to adopt it. Instead, based on its review of the motion to strike, the response, the relevant case law, and the record in this case, the Court issues the following order.

1

# I. BACKGROUND

Plaintiff United States of America filed a verified complaint for forfeiture of $48,880.00 ("the Respondent Property"), more or less, in United States Currency, on December 11, 2017, pursuant to 18 U.S.C. § 981(a)(1) and 21 U.S.C. § 881(a)(6). (Compl., Dkt. 1, at 1). The complaint alleges that the Respondent Property was seized by the United States Postal Inspection Service ("USPIS") on June 23, 2015, as part of an investigation into the importation of high-grade marijuana to the Killeen, Texas area. (Compl., Dkt. 1, at 3–7).

Beginning on April 26, 2016, a notice of complaint of forfeiture was published on a government website (www.forfeiture.gov) for 30 days. (Decl. of Pub., Dkt. 7). In addition, the government "served" Ephrain Joseph and his common law wife, Erin Dizer, "with direct notice of [the] civil forfeiture action" on June 15, 2016. (Mot. to Strike, Dkt. 12, at 2 (citing Dkt. 9)).

On July 5, 2016, Joseph submitted an "Answer to Verified Complaint for Forfeiture," where he admitted or denied the factual allegations set out in the Verified Complaint for Forfeiture. (Ans., Dkt. 8). He supplemented this answer on July 14, 2016, correcting the case number listed in the case caption included at the beginning of his prior answer. (Supp. Ans., Dkt. 10).

On January 6, 2017, the government filed a motion to strike Joseph's answers, arguing that his answers should be struck because he failed to file a verified claim pursuant to Rule G of the Supplemental Rules of the Federal Rules of Civil Procedure. (Mot. to Strike, Dkt. 12, at 1–3). It argues that because Joseph was served with notice on June 15, 2016, any claim he wished to file was due by July 20, 2016, but that no claim had been filed. (Mot. to Strike, Dkt. 12, at 3–4). The government attaches three letters it sent to Joseph in support of its motion. (Mot. to Strike, Dkt. 12, Exs. A–C). The first two, sent in mid-July and mid-August, explained the requirements of Rule G and indicated that "the United States will move to strike [Joseph's] answer for failure to file the required claim." (Mot. to Strike, Dkt. 12-1, Ex. A). The third letter, sent October 6, 2017, returned

Joseph's mailing, explaining that "[Joseph's] latest submission fails because it has not been filed with the Court and does not set out the items required by the applicable court rule." (Mot. to Strike, Dkt. 12-3, Ex. C). The government did not provide the Court with a copy of the mailing that it returned to Joseph, nor did it provide more information about the mailing's contents, but presumably his mailing was an attempt by Joseph to serve a claim for the Respondent Property on the appropriate government attorney. (*See* Mot. to Strike, Dkt. 12-3, Ex. C). In addition to its argument that Joseph's answer must be struck under Rule G, the government also argues that, because Joseph failed to submit a timely, proper claim, he has no statutory standing to contest the forfeiture. (*See* Mot. to Strike, Dkt. 12, at 5–6).

On January 20, 2017, Joseph responded pro se to the government's motion, attaching "an original claim," a "previous claim," filed on or about June 16, 2016, a "complaint" filed on or about July 7, 2016, and "[n]umerous W-2 and bank statements which establish the source" of the Respondent Property. (Resp., Dkt. 14, at 1).[1] The "original claim" states, "I, Ephrain Joseph, state under penalty of perjury that I am the owner of defendant: $48,880, more or less, in United States currency." (Resp., Dkt. 14-1, at 1). It is dated January 19, 2017, and is signed by Joseph, who it identifies as "claimant." (Resp., Dkt. 14-1, at 1). The "previous claim" is a document entitled "Claim of Ownership," which is addressed to the USPIS's Asset Forfeiture Unit and states, among other things, that Joseph is the owner of the Respondent Property. (Resp., Dkt. 14-1, at 2). It is dated June 16, 2016. (Resp., Dkt. 14-1, at 3). The "complaint" is similar to the "previous claim," but includes a case caption at the top. (Resp., Dkt. 14-1, at 4). It states that it is "In the United States Court of Federal Claims," but lists the case number for this action, 6:15-cv-0364. (Resp., Dkt. 14-1, at 4). It is

---

[1] The District Court Clerk's office filed the attachments under seal because some of them included the personal information of Joseph, including his social security number and banking information. (*See* Resp., Dkt. 14-1, at 6–23).

dated as signed by Joseph on July 7, 2016. (Resp., Dkt. 14-1, at 4).[2] The final attachments are various

W-2s for Joseph from 2009 through 2013, and bank statements for an account of Joseph's at the

Bank of America from 2013 and 2014. (Resp., Dkt. 14-1, at 6–23). The government did not reply to

Joseph's response.

On March 10, 2017, the Magistrate Judge entered his Report and Recommendation. It

recommended that the government's motion to strike be granted and that Joseph's answer be struck

from the record. (Report & Recommendation, Dkt. 19, at 6). It used a test from the Eleventh Circuit

to consider whether a court should, in its discretion, allow a late claim under Rule G. (*Id.* at 4–6). In

applying that test to this case, however, the report ignored Joseph's response to the government's

motion to strike—it specifically stated that "as of the signing of this report, Joseph has failed to file

any claim as to the [Respondent Property]," without considering whether Joseph's January 20, 2017

response included a claim. (*Id.* at 3). In addition, it did not address the possible relevance of that

filing to the test it employed. (*See id.* at 4–6).

The Report and Recommendation explained that the parties had fourteen days in which to

file objections to findings and recommendations it contained. (*Id.* at 7). No objections were filed.

## II. LEGAL STANDARD

*A. Review of a Magistrate Judge's Report and Recommendation*

Any party may contest the Magistrate Judge's findings and recommendations by filing

written objections within fourteen days of being served with a copy of the Memorandum and

Recommendation. 28 U.S.C. § 636(b)(1)(C). The objections must specifically identify those findings

or recommendations that the party wishes to have the district court consider. *Thomas v. Arn*, 474

U.S. 140, 151 (1985). The Court must conduct a de novo review of any of the Magistrate Judge's

---

[2] A Pacer search reveals that Joseph did in fact start an action in the U.S. Court of Federal Claims on July 11, 2016, *see Joseph v. United States*, 1:16-cv-0821-SGB (Fed. Cl.), although the initial complaint is under seal and currently inaccessible to this Court, *see id.* The Court of Federal Claims dismissed Joseph's action on February 21, 2017, after it concluded that it did not have jurisdiction to hear Plaintiff's claims. *Id.*

4

conclusions to which a party has specifically objected. *See* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). On the other hand, findings to which no specific objections are made do not require de novo review; the Court need only determine whether the Memorandum and Recommendation is clearly erroneous or contrary to law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).

*B. Motion to Strike*

Pleading requirements for Forfeiture Actions in Rem are governed by Rule G of the Supplemental Rules of the Federal Rules of Civil Procedure. *See generally* Fed. Supp. R. Civ. P. G. Rule G(5) governs responsive pleadings. It provides that:

> A person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending. The claim must:
> (A) identify the specific property claimed;
> (B) identify the claimant and state the claimant's interest in the property;
> (C) be signed by the claimant under penalty of perjury; and
> (D) be served on the [designated] government attorney . . . .

Fed. Supp. R. Civ. P. G(5)(a). If direct notice is sent to a potential claimant, the claim must be filed by the deadline within the notice, which must be "at least 35 days after the notice is sent." Fed. Supp. R. Civ. P. G(5)(a)(ii)(A); Fed. Supp. R. Civ. P. G(4)(b)(ii).

"[T]he government may move to strike a claim or answer . . . for failure to comply with Rule G(5)." Fed. Supp. R. Civ. P. G(8)(c)(i)(A). To the extent the failure is substantive, the Advisory Committee Notes regarding Rule G indicates that the parties should be provided the same opportunity to cure defects afforded to parties under Rule 15. Fed. Supp. R. Civ. P. G, advisory comm. notes sub. 8 ("As with other pleadings, the court should strike a claim or answer only if satisfied that an opportunity should not be afforded to cure the defects under Rule 15."); *see also United States v. ADT Sec. Servs., Inc.*, 522 F. App'x 480, 490 (11th Cir. 2013). To the extent that failure

5

is based on the timing of the filing, however, "the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B); [3] *see also* Fed. Supp. R. Civ. P. G(5)(a)(ii) ("Unless the court for good cause sets a different time . . . .").

District courts "enjoy[] broad discretion to grant or deny an extension," as the "'excusable neglect' standard is 'intended and has proven to be quite elastic in its application.'" *Salts v. Epps*, 676 F.3d 468, 474 (5th Cir. 2012) (quoting Wright & Miller, Federal Practice and Procedure § 1165). Relevant factors to the determination of "excusable neglect" include: "(1) 'the possibility of prejudice to the other parties,' (2) 'the length of the applicant's delay and its impact on the proceeding,' (3) 'the reason for the delay and whether it was within the control of the movant,' and (4) 'whether the movant has acted in good faith.'" *Id.* (quoting Wright & Miller, Federal Practice and Procedure § 1165); *see also Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 162 n.8 (5th Cir. 2006). In specifically considering whether discretion should be exercised to extend the time allowed to file a claim in a civil forfeiture action, courts have considered various factors, including "the time the claimant became aware of the seizure, whether the Government encouraged the delay, the reasons proffered for the delay, whether the claimant had advised the court and the Government of his interest in defendant before the claim deadline, whether the Government would be prejudiced by allowing the late filing, the sufficiency of the answer in meeting the basic requirements of a verified

---

[3] Rule A of the Supplemental Rules of Civil Procedure provides that "The Federal Rules of Civil Procedure also apply to the foregoing proceedings," including forfeiture actions in rem arising from a federal statute, "except to the extent that they are inconsistent with these Supplemental Rules." Fed. Supp. R. Civ. P. A(2). Rule G similarly provides "[t]o the extent that this rule does not address an issue . . . the Federal Rules of Civil Procedure also apply." Fed. Supp. R. Civ. P. G(1). The Court concludes that Rule 6 is applicable to Supplemental Rule G's deadlines for the filing of a claim because Rule G does not address the issue, and Rule G is not inconsistent with Rule 6. *See United States v. $229,590.00 in U.S. Currency Seized from a Safe*, No. 3:12-CV-0893-D, 2013 WL 625742, at *2 (N.D. Tex. Feb. 20, 2013) (applying Rule 6 to issue of whether deadline for answer filed under Rule G should be extended); *United States v. $417,143.48, Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents*, No. 15-3967, 2017 WL 946720, at *1 (2d Cir. Mar. 8, 2017) (applying Rule 6's "excusable neglect" standard and suggesting that Rule G is silent on the issue); *United States v. Ford 250 Pickup 1990, VIN # 1FTHX26M1LKA69552*, 980 F.2d 1242, 1245 (8th Cir. 1992) ("In order to avoid the strict requirements of Rule C(6) [(Rule G(5)'s predecessor)], the party attempting the untimely filing must show excusable neglect . . . .").

claim, and whether the claimant timely petitioned for an enlargement of time." *United States v. $125,938.62*, 370 F.3d 1325, 1329 (11th Cir. 2004).

"[T]he government may [also] move to strike a claim or answer . . . because the claimant lacks standing." Fed. Supp. R. Civ. P. G(8)(c)(i)(B). To establish statutory standing in a forfeiture case, a claimant must comply with the procedural requirements set forth in Rule G, including by filing a claim. *United States v. $487,825.000 in U.S. Currency*, 484 F.3d 662, 664 (3d Cir. 2007) (applying the previous version of Rule G).

### III. ANALYSIS

Here, because no objections to the Report and Recommendation of the Magistrate Judge have been filed, the Court reviews the Report and Recommendation only for clear errors or recommendations that are contrary to law. The Court concludes that it was clear error for the Magistrate Judge not to consider Joseph's response to the government's motion to strike, and thus declines to adopt the Report and Recommendation.

Before the Court considers whether it should extend the filing deadline for a claim by Joseph in this action, it will consider whether Joseph did, in his response to the government's motion to strike, file a claim sufficient under Rule G on January 20, 2017. First, Joseph's claim identifies the specific property he claims—the $48,880 in United States currency at issue in this action. *See* Fed. Supp. R. Civ. P. G(5)(a)(i)(A). Second, it identifies Ephrain Joseph as the "[c]laimant," and states that he is the owner of the Respondent Property. *See* Fed. Supp. R. Civ. P. G(5)(a)(i)(B); *cf. United States v. $38,570 U.S. Currency*, 950 F.2d 1108, 1113 (5th Cir. 1992) (holding that a statement by the claimant that he was the owner of the seized property was sufficient to confer standing where the government had indicated in its complaint that the claimant had a relationship with the property). Third, it is signed by Joseph and states that the claim is made "under penalty of perjury." *See* Fed. Supp. R. Civ. P. G(5)(a)(i)(C). Fourth and finally, it states that it was served on U.S. Attorney, Daniel

M. Castillo, who is the lead attorney in this action, on January 19, 2017. *See* Fed. Supp. R. Civ. P. G(5)(a)(i)(D).[4] The Court therefore concludes that Joseph's "original claim" meets the requirements of Rule G.

The Court will therefore turn to the issue of whether the Court should, in its discretion, accept the late filing of Joseph's claim. For the purposes of this issue, the Court will construe Joseph's response to the government's motion to strike his answer as a motion to extend the time to file his claim pursuant to Federal Rule of Civil Procedure 6(b)(1), *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed.'"), and consider whether his failure to timely file a claim is due to excusable neglect.

*A. Possibility of Prejudice to Other Parties*

Under the first factor, the Court considers the possibility of prejudice to the government that would be created if the late filing were allowed. The Court concludes that any possibility of prejudice is minimal. First, the government knew that Joseph was a potential claimant, which is why it sent him direct notice of the action. *See* Fed. Supp. R. Civ. P. G(b)(i) ("The government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government . . . ."). Second, the government knew or should have known that Joseph was attempting to file a claim for the Respondent Property because he filed an answer and supplement to his answer. These filings were made on July 5 and July 14, 2016, well before Joseph's deadline for filing a claim in the action had passed on July 21, 2016. In contrast, Joseph's failure to file a timely claim will likely extend the length of time required for this action somewhat (although the Court notes that the government has not moved this action forward

---

[4] Without any information suggesting otherwise, and because the government attorney should have otherwise received notice of the filing through the Court's electronic filing system, the Court assumes that the government consents to Joseph's service. To the extent the government wishes to object to the service of Joseph's response, it should file a motion with the Court requesting appropriate relief.

quickly itself), and create some additional costs, including the costs of preparing the motion to strike and the letters informing Joseph about how a claim could be filed.

*B. Length and Impact of Applicant's Delay*

Under the second factor, the Court considers the length of Joseph's delay and its impact on the proceeding. As previously noted, Joseph's deadline for filing a claim in the action was July 21, 2016, and his claim was filed six months later, on January 20, 2017. The Court concludes the impact of this delay was small. The delay did not interfere with other deadlines, and no judgment or default judgment was entered. In other words, the delayed filing—should it be accepted—will put the case in the same position it would have been had the claim been timely filed, albeit several months later.

*C. Reasons for Delay*

Under the third factor, the Court considers the reasons for the delay and whether they were in Joseph's control. "Of the nonexclusive factors, this one is 'perhaps the most important single factor.'" *§229,590.00 in U.S. Currency Seized from a Safe*, 2013 WL 625742, at *5. Here, although Joseph does not directly explain his reasons for his delayed filing, there is substantial evidence that Joseph's delay was due to his genuine misunderstanding about how to properly file a claim, despite repeated attempts to do so. First, in his response to the government's motion to strike, Joseph attaches a document he labels a "previous claim." While this document was never filed with the Court, and there is no suggestion that it was served on the appropriate government attorney, it is entitled a "Claim of Ownership," and complies with some of the requirements of Rule G. It is signed "subject to the penalty of perjury," it specifically identifies the Respondent Property by amount, seizure number, and asset ID, and it claims that Joseph is the owner of the property. (Resp., Dkt. 14-1, at 2). Further, it is dated June 16, 2016, more than a month before Joseph's deadline for filing a claim was reached. (Resp., Dkt. 14-1, at 3). Joseph addressed the claim to the USPIS Asset Forfeiture Unit, at the address provided on USPIS's website for Asset Forfeiture claims. *See* U.S.

9

Postal Inspection Service, *Asset Forfeiture, Legal Notices*, https://postalinspectors.uspis.gov/investigations/MailFraud/fraudschemes/revenuefraud/AssetForfeiture.aspx (last visited April 13, 2017). This document strongly suggests that Joseph was trying to file a claim but misunderstood that he needed to do so in this Court rather than with USPIS. Given that the Respondent Property was first seized by USPIS, this misunderstanding is an understandable one for a pro se litigant.

Next, Joseph also attached to his response a very similar document, entitled a "Complaint," and labeled it for the Court of Federal Claims. Notably the case caption on this document includes the case number for this action, although it was not filed with this Court. Instead, it was likely filed with the Court of Federal Claims. *See supra* n.1. Again, this document suggests that Joseph was trying to file a claim, but misunderstood how to do so.

Further, there is some evidence that Joseph thought he had filed a sufficient claim before the deadline and thus failed to correct his previous attempted claims. In forfeiture actions, answer deadlines are triggered by the filing of a claim. *See* Fed. Supp. R. Civ. P. G(5)(b) ("A claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim."). Joseph submitted his answer—the answer the government now seeks to strike—on July 5, 2016. (Ans., Dkt. 8). Had the document Joseph labeled his "previous claim" been filed with this Court and served on the designated government attorney the day it was signed, his answer would have been due on or before July 7, 2016. That Joseph filed his answer two days before that date suggests that he may have believed he had properly filed a claim, warranting the filing of an answer. This mistaken belief may have prevented Joseph from filing a claim that met the requirements outlined in Rule G sooner.

Later, after Joseph received letters from the government stating that it would move to strike his answer because he had failed to file a claim, Joseph sent some correspondence to the

government. Based on the government's response, which explained that Joseph's "latest submission fails because it has not been filed with the Court and does not set out the items required by the applicable court rule," (Mot. to Strike, Dkt. 12-3, Ex. C), this correspondence appears to be another attempt by Joseph to file a claim. In light of Joseph's repeated attempts to file a claim for the Respondent Property, the Court concludes that his delay is understandable and excusable for a pro se litigant.

*D. Whether the Movant Has Acted in Good Faith*

Finally, the Court must consider whether Joseph acted in good faith in making a delayed filing. Here, as the Court previously explained, the record strongly suggests that Joseph's delay was caused by a genuine misunderstanding about how to file a claim, and that he may have initially misunderstood that he had not yet filed a proper claim. The Court therefore concludes that Joseph acted in good faith.

Considering each of these factors together, the Court concludes that there is good cause to extend the time for Joseph's claim to be filed under Rule G, and extends the time for the filing of Joseph's claim to January 20, 2017, the date on which Joseph filed his response including an original claim. In light of the Court's conclusion that Joseph has filed a claim pursuant to Rule G, the Court also finds that Plaintiff has standing to assert his claim. *See* 18 U.S.C. § 983(a)(4)(A).

## IV. CONCLUSION

The Court declines to adopt the Report and Recommendation of the Magistrate Judge and **DENIES WITHOUT PREJUDICE** Plaintiff's Motion to Strike Joseph's Answer (Dkt. 12).

**SIGNED** on April 26, 2017.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE